(C.D. 2346)

THE TEXAS COMPANY *v.* UNITED STATES

United States Customs Court, Second Division

(Decided June 14, 1962)

*Sharretts, Paley & Carter* (*Howard Clare Carter, Donald W. Paley,* and *W. R. Johnson* of counsel) for the plaintiff.

*Joseph D. Guilfoyle,* Acting Assistant Attorney General (*Henry J. O'Neill* and *Richard E. FitzGibbon,* trial attorneys), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges; RAO, J., concurring

LAWRENCE, Judge: Plaintiff imported a device described in the record as a "gear lubricant testing machine and equipment." It was classified by the collector of customs as "Laboratory apparatus" in paragraph 360 of the Tariff Act of 1930 (19 U.S.C. § 1001, par. 360), as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, supplemented by Presidential notification, 86 Treas. Dec. 337, T.D. 52820, and duty was imposed thereon at the rate of 30 per centum ad valorem.

Plaintiff, by its protest, claims that the importation should be classified in said paragraph 360, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, which provides for "Laboratory instruments, apparatus, or appliances, for determining the strength of materials or articles in tension, compression, torsion, or shear, * * * and parts thereof," and subjected to duty at the rate of 20 per centum ad valorem.

When the case originally came on for trial, plaintiff, in its opening statement, made the same claim as was set out in the protest. However, at the close of the trial, plaintiff limited its claim of classification as laboratory instruments, apparatus, or appliances, for determining the strength of materials or articles in compression or shear, making no claim as to tension or torsion, and the case was submitted for decision. Subsequently, however, upon motion of plaintiff, the submission was set aside and the case restored to the calendar.

When the case was next called for trial, plaintiff moved that the record be amended to include the words "we also claim that torsion is involved," and, there being no objection by the defendant, the record was amended accordingly and the case resubmitted.

The pertinent text of paragraph 360 of the Tariff Act of 1930, as modified, *supra*, which was in force at the time the merchandise in controversy was entered for consumption, reads as follows:

Paragraph 360, as modified by the Torquay protocol and Presidential notification, *supra*:

Scientific and laboratory instruments, apparatus, utensils, appliances (including mathematical instruments, but not including surveying instruments), and parts thereof, wholly or in chief value of metal, and not plated with gold, silver, or platinum, finished or unfinished, not specially provided for:

> Slide rules wholly or in chief value of synthetic resins_____ * * *
> Other (except laboratory instruments, apparatus, or appliances, for determining the strength of materials or articles in tension, compression, torsion, or shear; moisture testers; pyrometers; and parts of any of the foregoing) _____ 30% ad val.

Paragraph 360, as modified by the General Agreement on Tariffs and Trade, *supra*:

Laboratory instruments, apparatus, or appliances, for determining the strength of materials or articles in tension, compression, torsion, or shear, and pyrometers and moisture testers which are scientific or laboratory instruments, apparatus, utensils, or appliances; all the foregoing and parts thereof, wholly or in chief value of metal, and not plated with gold, silver, or platinum, finished or unfinished, not specially provided for_____ 20% ad val.

Plaintiff introduced the following exhibits which were received in evidence.

Illustrative exhibit 1—photograph of the apparatus in controversy.

Illustrative exhibit 2—photograph of a portion of the apparatus in which lubricants are tested.

Illustrative exhibit 3—simplified line drawing to illustrate the basic principles of the testing mechanism.

Collective illustrative exhibit 4—two unused gears of special description for use in the testing portion of the apparatus.

Illustrative exhibit 5—one of such gears which had been used in a testing operation.

Defendant introduced exhibit A, an operators' handbook, published by the manufacturer of the apparatus in controversy, which states the purpose, use, and description of the apparatus and its principal parts. It also contains instructions as to the installation and operation of the apparatus.

At the trial, Emil F. Koenig, the only witness in the case, was called by plaintiff. From his testimony, it appears that he is department head of the Products Application Department of the Texaco Research Center of Texaco, Inc., at Beacon, N.Y. He is a graduate of the University of Minnesota with the degree of bachelor of chemical engineering. After graduating from the university, he found employment in chemical engineering, as an inspection engineer, and also as a plant production engineer. Since 1941, he has been employed at

the Texaco Research Center, above referred to, which is maintained by the Texaco company, producer, refiner, and marketer of petroleum products. The center is engaged in fundamental scientific research and the application of scientific principles and methods for developing and testing products for commercial use.

The qualifications of the witness Koenig to testify upon the subject here in controversy are well established and not challenged. As head of the Products Application Department, he was familiar with the various types of mechanical test work necessary for evaluating the commercial possibilities or need for improvements in Texaco products, which includes lubricants, fuels, and various industrial oils. For many years, Koenig had devoted a great deal of his working time to the mechanical testing of petroleum lubricants.

After the subject apparatus was imported, it was installed in Koenig's department, where it was being operated under his supervision. As a matter of fact, he has, at times, operated the machine himself.

The device under consideration is a carefully integrated assembly of parts which is used to test, in comercial laboratories, the efficiency of oil lubricants in protecting certain types of gears, such as those used in jet aircraft engines, from wear. As stated in the Operators' Handbook, defendant's exhibit A, at page 1—

This machine is specially designed for investigating the antiscuffing properties of engine oils of the mildly doped types used in aero engine reduction gears, and is intended to give an indication of the suitability of these oils as gear lubricants, as a preliminary step before running full scale engine tests. The oils are tested by finding at what load scuffing occurs on the teeth of gears of standard type.

When asked to explain how the imported device determines the strength of material in compression or shear, the witness pointed out that when the gear teeth are in contact they are, by reason of the load applied to them, under a compressive force, and shearing action takes place as the gears rotate by each other. The ultimate result sought to be established by the use of the device is the ability of the lubricant to prevent contact of the gears, in other words, to establish an oil film to prevent a direct metal-to-metal contact, which causes scuffing, wearing, and deterioration of the gears. The ability to protect the gear metal parts depends upon the strength of the lubricant in compression and its resistance to the pressure imposed on the lubricant when the gears are rotating. Furthermore, the strength of a gear lubricant in compression is measured by the greatest load or pressure it can successfully resist at the normal operating temperature of the lubricant. Temperature variations are obviated by means of an electrical heater and instrument gauges, which maintain a uniform temperature.

The following extracts from defendant's exhibit A clearly indicate that in testing the antiscuffing properties of engine oils, pressure is an

important factor in the operation. At page 3 of exhibit A, there is the statement—

* * * The test oil delivery pressure is shown on the pressure gauge housed in the cabinet panel, its pressure capsule being connected to the oil gallery pipe entering the test head.

Under the heading "TESTING TECHNIQUES," page 15, is the following—

When oil is freely circulating and showing pressure on both gauges, turn the heater regulator switch to "High" position.

It appears further that a 10-pound load, which may be increased by 5 pounds, is applied to the gears in the testing procedure to determine the efficiency of the oil on the test gears.

It is stated by the author of exhibit A, at page 17, that—

When the machine is used for testing lubricant, the property under examination is the prevention of scuffing. The load at which scuffing occurs is taken as the failure load for the test oil.

Defendant cites numerous definitions of the words fluid, incompressible, shape, compression, et cetera, from various authorities, from which it contends that the oil being tested in the machine is an incompressible liquid and, hence, the machine in controversy cannot be properly treated as an instrument or apparatus for determining the strength of materials or articles in compression. This phase of the case will be considered, *infra*.

Plaintiff relies upon the decision of this court in *Davies Turner & Company* v. *United States*, 40 Cust. Ct. 439, Abstract 61536. That case related to a machine which was designed to determine resistance to abrasion or wear of samples of metal, which was accomplished by rotating one disk of metal against another disk of metal while pressure was applied to the two disks. The machine was equipped with a dynamometer, which indicated on a graduated scale the frictional resistance between the two disks.

In its opinion, the court observed—

* * * The witness stated that the term "compression" means an act of being compressed, *or pressed together*. The metals and other articles, the strength of which is being determined by the machine, are in compression as the machine *presses* the two disks together while also rotating them. In testing the resistance of the metal or other material to abrasion, compression is necessary before abrasion can occur, and thus the machine determines the strength of metals and other articles in compression. [Italics added.]

The court, accordingly, held that the article there in controversy was laboratory apparatus for determining the strength of materials or articles in compression, within the meaning of paragraph 360 of the Tariff Act of 1930, as modified, *supra*.

The Government argues that the *Davies Turner* case is "clearly inapplicable and uncontrolling herein" primarily for the reason that the apparatus involved in that case was one used for determining the strength of materials, not liquids, and that the common meaning of the term "compression," as used in paragraph 360, *supra*, was not raised and passed on therein. As above indicated, however, the court held that the apparatus was one for determining the strength of materials or articles in compression, clearly indicating that the word "compression" was not to be interpreted in a strict scientific sense but should be given a more liberal meaning, in the absence of a restricted commercial meaning. As stated in *Hummel Chemical Co.* v. *United States*, 29 C.C.P.A. (Customs) 178, C.A.D. 189, tariff acts are not written in the language of science.

We have referred to the functional importance of pressure when the subject apparatus is used to determine the strength of lubricating oils. In this connection, it is significant to note that, in the definitions set forth below, the word "compression" is used to define pressure.

Webster's New International Dictionary, second edition:

pressure * * * 1. A pressing, or state of being pressed; specif., compression; * * *.

Webster's New World Dictionary of the American Language, college edition (1958):

pressure * * * 1. a pressing or being pressed; compression; squeezing.

Webster's New Collegiate Dictionary (1956):

pressure * * * 1. A pressing, or state of being pressed; specif.: a A compression; a squeezing.

The New Century Dictionary (1946):

pressure * * * The act of pressing, or the state of being pressed; the exertion of force upon a body by another body in contact with it; compression.

Among the several definitions of the word "compression" appearing in Funk & Wagnalls New Standard Dictionary of the English Language is the following:

Any apparatus for compressing air, liquids, or other substances.

The Oxford University Dictionary, 1955 edition, gives the following definition of the word "compressed":

v. 1. To press together, to squeeze; * * *.

It is significant that, in Marks' Mechanical Engineers' Handbook, fifth edition, 1951, the index refers to the compressibility of oil at page 524, and, under the heading "Compressibility of Liquids," the coefficient of compressibility $b$ is shown by an equation followed by the statement, "The value of $b$ x $10^6$ for oils at low pressures at about 70 F

varies from about 55 to 80; * * *," which weakens defendant's argument that the test oil is an incompressible fluid.

It is notable also that Webster's Dictionary, 1955 edition, contains the following definitions of "fluid" and "liquid":

**fluid,** *n.* 1. A substance which yields to any force, however small, tending to alter its shape. Fluids include both liquids and gases.

**liquid,** *n.* 1. A substance in the liquid state. Liquids differ from gases in being only slightly compressible, and in being incapable of indefinite expansion. * * *

In view of our disposition of the case, we do not pass on the alternative claim of plaintiff that the device in controversy is used to test the strength of the test gears as well as of the oil.

The testimonial record as well as the Operators' Handbook (exhibit A) gives a very detailed account of the construction, operation, and functions of the imported device which it is deemed unnecessary to repeat here. We are satisfied from a review of the entire record that the subject machine comes within the scope of paragraph 360, as modified, *supra*, as a laboratory instrument, apparatus, or appliance, for determining the strength of materials or articles in compression, dutiable at 20 per centum ad valorem, as claimed by plaintiff in its protest, which is sustained to the extent indicated.

Judgment will issue accordingly.

CONCURRING OPINION

RAO, Judge: I am constrained to agree with the decision in this case, in view of the fact that the evidence introduced by the plaintiff has not been controverted. Although I harbor some doubt that oil is a type of material which could be subjected to forces of tension, compression, torsion, or shear, within the contemplation of the provision of paragraph 360 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, for machines for testing the strength of materials under such forces, the absence of evidence to rebut the *prima facie* case made out by the plaintiff leaves me with no alternative but to concur in the conclusion reached herein.